## Charles Hohnadel, Appellee, v. John J. Ellsworth et al., Appellants.

### Gen. No. 5292.

1. PARTNERSHIP—*when dissolution does not affect joint liability.* The dissolution of a partnership does not affect the joint liability of the partners to those who have dealt with the partnership and have had no knowledge of its dissolution.

2. PARTNERSHIP—*when admission competent; when not.* Where an action is pending against two or more partners and one or more of the defendants puts the fact of partnership in issue by a proper plea, the admissions, statements or declarations of his co-defendant made in his absence in reference to the existence of the partnership are not, in the absence of other evidence tending to establish the partnership, admissible upon the issue; but where sufficient evidence has been given to raise a fair presumption that two or more persons are partners then the acts and declarations of each are admissible as evidence against the other for the purpose of strengthening the *prima facie* case already established.

3. EVIDENCE—*when admission of erroneous will not reverse.* The admission of incompetent evidence will not reverse if no harm has resulted.

Assumpsit. Appeal from the County Court of Ogle county; the Hon. FRANK E. REED, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed March 11, 1910.

PATTISON & SHAW and WILLIAM P. FEARER, for appellant.

FRANC BACON and O. M. GROVE, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was a suit in *assumpsit* brought by Charles Hohnadel, appellee, against John J. Ellsworth, Harry McNair and John E. Smith to recover the price of a horse bought from appellee by Smith for which he gave his personal check, which later was dishonored. The declaration contained the common counts only. Appellants all joined in a plea of *non assumpsit,* and Ellsworth and McNair interposed a verified plea of non-joint liability.    Upon trial, appellee obtained a verdict and judgment for $152.50, the purchase price of the horse, and Ellsworth and McNair prosecute this appeal.

There is no controversy over the amount of the judgment or Smith's liability.  The contested question is, were Smith, Ellsworth and McNair jointly liable in the purchase of the horse.   It is conceded that in the year 1908 they were in partnership in buying and selling horses.   Under their arrangement, Smith bought horses in the country, gave his personal check therefor, and then drew a draft on Ellsworth and McNair for the amount of his purchases and deposited that draft in the bank against which he had drawn the checks, and Ellsworth and McNair honored the drafts. The horses were shipped to Ellsworth and McNair in Chicago, sold by them, and the net profits divided, Smith receiving one-half and Ellsworth and McNair one-half and suffering all the losses, if any.  About the 1st of January, 1909, Ellsworth and McNair notified Smith that they would cease treating him as their partner in such transactions.   At times thereafter, Smith bought horses and shipped them to Ellsworth and McNair, who sold them on a commission.  Appellee testified that the last of March, 1909, he saw Smith and Ellsworth at a sale at Chadwick examining, pricing and buying horses together; and over appellant's objection, testified that he believed from what he there

saw that they were in partnership. The cashier of a bank at Chadwick testified that he clerked at the Chadwick sale; that Ellsworth bought some horses there and Mr. Smith paid for them with his personal check; that he drew a sight draft on Ellsworth and McNair for $3,500; that the horses purchased came to about $1,200. The difference in the draft and the price of the horses bought at the sale was checked out by Smith, and used by him in paying for other horses. Under Smith's instructions the bank was to pay for the horses that Smith bought outside of the sale as the checks came in. On May 20, 1909, Smith bought appellee's horse, and others about that time, and paid for them with his personal checks, and drew a draft on Ellsworth and McNair for the amount of such purchases, which they refused to honor although the horses were shipped to them and they sold them and received the proceeds. Appellee received the money on Smith's check from the bank, and after the draft was dishonored, refunded it. Smith testified that they were partners in the transaction; and on cross-examination, Ellsworth testified to three partnership transactions since the first of the year 1909; one on the 25th or 26th of March at the Chadwick sale, one about two weeks later and another on the 9th of May. Appellee testified that Smith told him when he bought his horse that he was buying for Ellsworth and McNair, and the cashier above referred to testified that Ellsworth said to him that there had been a partnership agreement between the parties which had been called off at one time and entered into again, but that at the time Smith bought appellee's horse there was no such agreement, claiming that the partnership had been terminated at the first of the year 1909; and said that there had been a difference in their accounts of several hundred dollars and that it was time to quit; that there had been a partnership agreement at times since the first of the year and at times there had been no such agreement; that there was a loss of $300 on the load of horses in

question; and in reply to an inquiry of the cashier if that were not quite an unusual loss, said that the horses got into Chicago on Sunday, and by reason of being shipped were gaunt and drawn, and that they (appellants) hurried them into market on Monday because they didn't know but that some of the farmers might come in to replevy them. If they were only selling the horses on commission as claimed by appellants, it would have made little difference to them whether the farmers replevied them or not, but if they bought the horses and had determined to repudiate the partnership and sell the horses and recoup what Smith owed them on other transactions, then their conduct is explicable.

It is admitted by appellants that a partnership had existed between the parties, and claimed that it was dissolved about the first of the year 1909, but it is not claimed that appellee or the public had any notice of the termination of the relations. It is admitted that there were partnership transactions subsequent thereto. We are of the opinion that the evidence clearly supports the finding of the jury that appellants were jointly liable with Smith for the price of the horse.

Appellants contend that it was error to permit appellee to testify, that from what he saw at the Chadwick sale, he believed that a partnership existed between the parties. As this belief was borne out by Ellsworth's testimony that the transaction at the Chadwick sale was a partnership deal, we consider that the error was but technical and not harmful.

It is urged that the admission over appellants' objection of Smith's testimony that he and appellants were partners, and appellee's statement that Smith told him that he was buying for Ellsworth and McNair, was error. Where, as here, an action is pending against two or more partners and one or more of the defendants puts the fact of partnership in issue by a proper plea, the admissions, statements or declara-

tions of his co-defendant, made in his absence, in reference to the existence of the partnership are not in the absence of other evidence tending to establish a partnership admissible upon the issue. Hahn v. St. Clair Savings & Ins. Co., 50 Ill. 456; Conlan v. Mead, 172 Ill. 13; Daugherty v. Heckard, 189 Ill. 239. But where sufficient evidence has been given to raise a fair presumption that two or more persons are partners, then the acts and declarations of each are admissible as evidence against the others for the purpose of strengthening the *prima facie* case already established. 1 Greenleaf on Evidence, 177; Conlan v. Mead, *supra*. Aside from the evidence of Smith that they were partners, and Smith's statement to appellee that he was buying for Ellsworth and McNair, there was evidence abundantly tending to establish the existence, *prima facie,* of the partnership, and the admission of such evidence before a *prima facie* case was established did not amount to reversible error. Daugherty v. Heckard, *supra.*

We have carefully examined the instructions and conclude that as a whole they fairly presented the law of the case to the jury, and that appellants' criticism of appellee's fifth instruction is not warranted.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*